Petitioner Appellee and Robert Allegra, Respondent Appellant. Arguing for the Appellant, Maxine R. Greif-Bless. Arguing for the Appellee, Edward M. Duthaler. Good morning. Are both parties ready to proceed? I am, Your Honor. I am, Your Honor. Very well. Thank you. Then, Counsel, you can proceed for the Appellee. Thank you very much. May it please the Court and Counsel, my name is Maxine Greif-Bless. I'm present today representing the Respondent Appellant in this matter, Robert Allegra. And on behalf of myself and my client, I would like to take this opportunity to speak before the Court this morning. As Your Honors are aware, this matter arises as a result of a dissolution of marriage proceeding from DuPage County in the matter of the marriage of Lisa Allegra and Robert Allegra. Mr. Allegra has sought an appeal of the judgment that was rendered in that matter on July 22, 2019, alleging three central issues on appeal. As Your Honors are aware from the briefs that are before you, the issues Mr. Allegra has raised are, number one, the Court's failure to continue the trial or bifurcate the trial. Number two, the Court's reliance on the party's premarital agreement, which was not in evidence at the time the Court rendered its judgment. And number three, alleging error in the Court's award of child support within that judgment. I'll take each of those issues in turn. The first issue, and central to Mr. Allegra's appeal, is the issue of the trial court's failure to continue or bifurcate the trial. As Your Honors are aware, on the date that the case proceeded to trial, it was not the first time the matter had been set for trial. The matter had been continued on occasion for various issues, including Mr. Allegra's counsel's failure to be available on the first set trial date, which was in May of 2019. The matter was continued to July of 2019. Throughout the pendency of this action, and until recently granted furlough in July of 2020, Mr. Allegra was incarcerated in the federal penitentiary system. That fact was known to the trial court throughout the pendency of this action, and had been recognized by the Court and acknowledged on the record on a number of occasions. Additionally, the Court recognized the importance of Mr. Allegra being present at the trial of this matter, and had granted a writ of habeas corpus for him to be removed from the federal penitentiary for the duration of this trial and remanded to the custody of the DuPage County Sheriff's Office for the pendency of the trial. However, the federal correctional system refused to honor that writ. In light of the necessity for Mr. Allegra's presence at trial, the trial court then, upon Mr. Allegra's motion, should have either continued the trial to a date when Mr. Allegra could be present following his release, or bifurcated the trial pursuant to the statute contained in the Marriage and Dissolution Act at 750-ILCS-5-401B. As your honors are aware, the statute in its present format is not permissive. It is mandatory. It provides that the trial court shall not enter a divorce judgment unless the court has considered, approved, reserved, or made provision for the allocation of parental responsibilities, the support of any child in the marriage, the maintenance of either spouse, and the disposition of property. Where the court finds, quote, appropriate circumstances exist, unquote, the court shall, and that is mandatory, not permissive, bifurcate the trial and reserve any of the foregoing relevant issues. This presents for this honorable court the question of appropriate circumstances, particularly in this matter where Mr. Allegra was incarcerated throughout the pendency of the lower court proceedings. Incarceration is not specifically addressed in the case law, at least to the extent that I was able to research and locate decisions relevant to the state of Illinois. Incarceration is, however, recognized in our statutory proceedings, specifically the Marriage and Dissolution Act, as a basis for a $0 award of child support at 750-ILCS-5-505A-3.3b, which relates to the third issue presented in this appeal, but is important here because it also speaks in the terms of shall. It is not a permissive statute. The law thus does recognize incarceration as an appropriate or a special circumstance, requiring a deviation from the general rules of the Marriage and Dissolution Act. As your honors are aware, specific controls over general when looking at statutory construction. And the bifurcation statute itself, under our case law, has been applied to recognize an inability to pay child support, regardless of the basis of that inability, as an appropriate circumstance. And in the face of that inability, our courts have often found bifurcation to be appropriate. I direct your honors court's attention to the decision of In re the Marriage of Cone, In re the Marriage of Bogan, and In re the Marriage of Swipe. Cone is particularly instructive, and it has told us that the court specifically said, quote, we do not attempt to envision all of the possible appropriate circumstances, unquote, for bifurcation. Furthermore, in this matter, as in other matters that have been before the court previously, where the parties held largely separate assets and had a premarital agreement, bifurcation is appropriate. I would direct the court's attention to In re the Marriage of Blout, B-O-U-N-T, for that decision. Here, the parties had an allocation of parental responsibilities for their minor child in place. Maintenance was not an issue. The parties held largely separate assets and had a premarital agreement as well as a child support order in place. The court had previously awarded Mrs. Allegra assets from the sale of the party's home, and the balance of the sale proceeds were being held in escrow by her attorney at the time this matter proceeded to trial. The only issue remaining before the court was the distribution of the party's property. This is precisely the situation which required bifurcation under Section 401B of the statute and was the situation presented to the Blount Court. Given the importance of Mr. Allegra's presence at the trial, as recognized by the trial court in issuing its writ, Mr. Allegra's incarceration presented appropriate circumstances requiring the bifurcation of this trial. The court's failure to bifurcate this matter was an abuse of the court's discretion in assessing those appropriate circumstances, insofar as the court's decision ultimately deprived Mr. Allegra of his property rights, precluded him from presenting testimony on his own behalf or to counter the testimony offered by Mrs. Allegra, and further entered an award of child support in the court's knowing face of his inability to pay that child support based on his incarceration. As circumstances came to be, Mr. Allegra was released from the penitentiary on a furlough in July of 2020. Had the court continued the trial until Mr. Allegra's release, it would not have caused any prejudice or any delay in the ultimate resolution of the party's interests. The court could have entered its order divorcing the parties and preserving the status quo of the party's property situation without negatively impacting Mrs. Allegra. On the contrary, the court's failure to engage in that bifurcation and simply separate the parties reserving the remaining issues for future trial upon Mr. Allegra's release has, as I indicated, deprived Mr. Allegra of his property, deprived him of due process and the opportunity to appear before the court, and has ultimately presented a situation where the status quo was not preserved and cannot be restored. Accordingly, the trial court's failure in that area does require reversal and remand. The second issue that is presented by Mr. Allegra's appeal is the trial court's reliance on a premarital agreement that was not in evidence as the primary basis for the court's distribution of the party's property in the divorce judgment. The lower court's letter of opinion disposing of the party's property was founded, as I indicated, primarily on this premarital agreement executed by the parties. The premarital agreement, despite being the subject of a motion directed to its validity early in the proceedings of the underlying matter, is nowhere contained in the record. It is not contained in the motion addressing the validity of that agreement. It is not attached to the response to that motion, though both parties do make reference to it and refer to it as Exhibit A attached to their motion and their response. There was also a motion to allocate real estate proceeds in the underlying action, which the court ruled upon. Individual pages of the premarital agreement, four, I believe, were attached to that motion. None of those pages bore the party's signature, and obviously those four pages do not comprise the entirety of the party's premarital agreement. So again, despite a second opportunity to put the premarital agreement into the lower court record, that did not occur. The premarital agreement, again, does not appear in its entirety at this point in the lower court record. Furthermore, although the premarital agreement was referenced at several occasions throughout the trial of this action, and Mrs. Allegra provided testimony regarding her understanding of the premarital agreement, it was never offered as an exhibit at trial and admitted into evidence. Mrs. Allegra was questioned regarding her understanding and offered her testimony, but the premarital agreement itself is not within the list of exhibits admitted into evidence, and when the court, at the close of trial, reviewed the exhibits before it, the court specifically commented that it was in possession of Petitioner's Exhibits 1 through 29, and stated, so I have all of the exhibits. That's in the record at page 174. Counsel? Counsel, I know you were unable to hear the timer, but your time has elapsed, so please finish this thought. Thank you very much. Thank you, Your Honors. My point being is, throughout the record, the premarital agreement marked as Exhibit 30 is nowhere within the common law record, and as you'll see, as we've argued within our brief, at no point in time was it admitted into evidence by the trial court. Thus, it is improper for the trial court to have founded the majority of its judgment on disposing of the parties' assets upon that premarital agreement, which was not in evidence before the court. Thank you, Ms. Buss. Justice Hutchinson, do you have any questions? Yes, thank you, I do, and I apologize for my squeaky voice, or my coughy voice, whichever happens. Let's start where you finished, Counsel, and that is with the premarital agreement. Yes, thank you, Your Honor. Your client, through another attorney, I believe, filed a declaratory judgment to have that particular premarital agreement found invalid. Is that correct? That is correct, Your Honor. But then, January of 2019, I think it was January 7th, that motion for declaratory was withdrawn.  That is correct, Your Honor. So, that being the case, and no other motion filed concerning that document, what exactly did that leave for the court to determine concerning the validity or enforceability of the premarital agreement? Therein lies the problem, Your Honor. The court did enter an order finding the premarital agreement valid and enforceable. However, as I've indicated, Your Honor, the premarital agreement was not contained in the records. It was not attached to that motion for the declaratory action. It was not attached to Mrs. Allegra's response to that motion. We, therefore, then proceed through the action to trial, where, again, the premarital agreement is referenced in the trial. However, and the court itself made specific note after the parties had closed their proofs that it did not have the premarital agreement. The court made a comment that if it was contained in the record, the court would take judicial notice of it. It is not contained in the record. It is not in the record in this proceeding or any other proceeding of which the court could, therefore, take judicial notice of it. The court gave parties the opportunity to reopen proofs to submit that premarital agreement into evidence. That hearing occurred. The court seemed to be confused as to whether it was addressing the validity of the premarital agreement. When counsel for Mrs. Allegra drew the court's attention that the court had previously ruled that the premarital agreement was valid, the court ended the inquiry. Once again, the premarital agreement was never moved or admitted into evidence. Thus, we have a situation where the court has founded its judgment on a document that was never in evidence before the court. Counsel, on January 7th, which is a rather critical date, at least in my mind here, January 7th of 2019, we don't have any transcript of that proceeding, do we? You do not, Your Honor. Was a transcript prepared? Not to my knowledge, Your Honor. Was a transcript taken at that hearing? If I'm recalling correctly, I believe the DuPage County Court System still would have been on Courtsmart at that time. That was before we were using Zoom and Courtsmart and Companion. So there would have been a Courtsmart recording of that proceeding. Is there a bystander's report of that proceeding in this record? There is not, Your Honor. So we don't really know, other than representations you're making, what the judge said on January 7th, 2019, when the motion was withdrawn and he made the finding of valid and enforceable or basically found that there was nothing else at issue concerning the enforceability of that premarital agreement, correct? Correct. Other than what's reflected in the court order to that effect, correct. All right. Now, in terms of bifurcation, while Cone says that other circumstances or situations are not prohibited, does it say that, in fact, if another situation is presented, such as the situation of your client, that it must be allowed? No. No. Cone speaks in terms of making it essentially a case-by-case basis, where the court has to take into consideration what may be appropriate circumstances. And Cone went to the pains of indicating that they cannot possibly envision all appropriate circumstances, but did direct that the trial court is required to consider whether or not appropriate circumstances are present. As the case law has outlined, appropriate circumstances have been found where the female party to the case was pregnant allegedly by someone other than the husband. Bifurcation was appropriate in that circumstance. It's been appropriate where parties have been gravely ill and desire to divorce so that they can make alternative probate planning and distribution of their property that they would receive under the divorce, with the court allowing them to bifurcate and remarry. There have been a number of other circumstances, but incarceration has not been addressed. The court tends to focus on the impact that proceeding to a full trial so that all issues are resolved in one proceeding, rather than bifurcation, would have on the party's property and interest in property, which is precisely the situation that we have here. All right. Excuse me. Doesn't the trial court make it clear when he chooses not to bifurcate that this case has been pending for some time and most of them, not all of the continuances, but most of the continuances have been generated by your client or loss of an attorney and seeking new counsel? Certainly the court took that into consideration, I'm sure, Your Honor, and I'm certain that the court was taking that into mind and wishing to move this matter along and reach a resolution for the sake of the party, and I appreciate that. However, there would have been no harm rendered to either party had the court bifurcated the matter, granted their separation, granted their divorce, and simply preserved the status quo as it was at the time. Is that one of the considerations, that there would be no harm to either party in coming to a decision on bifurcation? Yes, the courts have looked at that, and the courts have looked at the impact that proceeding to a full trial would have on the party's property interest, and where there would be a negative impact without a party being involved in the matter or being engaged in the matter or a substantial change in property distribution, the courts have found bifurcation appropriate, and that is what we are alleging should have happened here. Had the trial been bifurcated, the parties allowed to divorce, but the issues of property rights reserved, there would, as I said, have been no harm to the petitioner. She was in possession of previously awarded property under an earlier motion addressing a sale of a residential property that was probably being held in escrow. Should that be due to her or the child's use during the pendency of this matter while we were waiting for the final trial on all issues? And allowing the bifurcation of entitled Mr. Allegra to have been present to provide... And finally, counsel, didn't one of your predecessors, one of the trial court counsel, indicate that he understood that there is no right to be present at trial, but his client wanted to be present at trial? I believe he did say that on the record, Your Honor. And... Why are we arguing it here? We're arguing it here, Your Honor, because we have a statute that tells us that bifurcation was mandatory. A slaw that tells us that bifurcation in this would have been an appropriate circumstance under that statute. And we have a situation where the trial court's ultimate judgment did result in a substantial change in property rights between the parties that could have been at least an opportunity for Mr. Allegra to speak to the court, to address the court, to be heard by the court before the court renders that judgment. And I think in failing to do that, the court did deprive Mr. Allegra ultimately of his property rights, whether or not he had an ultimate right to be present at the civil trial. Thank you, counsel, and thank you, Justice Bridges. I have no other questions at this time. Thank you, Your Honor. Thank you, Justice Hutchinson. Justice Zinov, do you have any questions? Yes, I do. Counsel, did you or your client make the argument at the trial level, your client's attorney at the trial level, that he could not afford to pay child support? I'll be honest with you, Your Honor, I'm not certain. Our office was not involved in the earlier child support award that was entered well before the trial court. That argument was presented to the court because the court was aware that Mr. Allegra was incarcerated. There was some assessment as to whether, and it is detailed in the respondent's appellee's brief, actually, where she speaks to the court's determination to set child support at that time and how that support order had to be agreed to by the Department of Justice that she was managing. So there was no assessment that Mr. Allegra was not working or earning income at that time. If that argument was not made at the trial level, it would be forfeited on appeal. Isn't that correct? I believe so, Your Honor, but that is acknowledged by the trial court in its order in the directive to the Department of Justice to allow Mrs. Allegra to pay the funds from the accounts she was managing that were under Mr. Allegra's name and business name at the time. Well, you're arguing now on appeal, are you not, that there was an error in the child support award? We are alleging that there was an error in the child support award, yes. Okay. Go ahead. I was going to say, Your Honor, we have a statute that provides with the parties' incarceration that there should have been a zero award made and a finding by the court as to why that zero award was appropriate, namely Mr. Allegra's incarceration, as well as the finding why the court ultimately deviated from that. And the court is required to make those specific findings, even acknowledging that he's incarcerated and not working, that the court is going to go ahead and make this award, obviously in excess of zero, in its judgment. Right, but is there also not another statute, 505A5, that talks about an obligation to make an award in an amount that is reasonable? And this record, I don't believe, shows that your client had no ability to pay. He had business income, and certainly the temporary child support payments were coming from his business accounts, so that there's not just one provision of the statute, I believe, that needs to be considered, but there is a second one, notwithstanding his incarceration. And that is correct, Ronna. That statute does direct the court to make a reasonable award based on the lifestyle the child would have expected to enjoy had the parties not separated. That is the general. Go ahead. We have the specific statutes that address various situations, including incarceration. And as a general rule of statutory construction, of which your honors are all well aware, the specific controls over the general. So even though the court does have that obligation, as it did here, to make an award which, in its opinion, it considers reasonable, then one must look to the more specific statutes, if any apply in any given circumstance. As here, we do have the statute that requires a $0 award and findings why the court's deviating, as well as the Fisher decision, which requires the court to tell us why it would be deviating from making the statutory award in this circumstance. The failure of the court is not necessarily, in the amount that was set for support, but the failure of the court is in the court to make those specific findings so that this honorable court would be able to review that award for its reasonableness and its appropriateness. The fact that the court omitted those findings is fatal under our decision in Fisher and by the specific language of the statutes itself. Okay. Thank you. I have no further questions at this time of counsel. Thank you. Thank you, Justice Eno. I have a few questions. Counsel, in Cohen, the Supreme Court held that the questions of trial support is an appropriate circumstance to warrant bifurcation, yet the respondent never raised his inability to pay trial support in either his motion, the hearing on his motion, or in his motion to reconsider. So why isn't this issue forfeited? The issue is not forfeited, Your Honor, because from the very tendency of this action, the court was aware of Mr. Allegra's incarceration. The court was aware that Mr. Allegra was a flight pilot and being incarcerated, he certainly could not fly. That is, not only himself being incarcerated and being the sole pilot for his business, but all of his equipment had been seized by the federal government at the time of his arrest. Therefore, the business of which he was the sole pilot could not operate as it had no equipment. There is, the court was aware at the time that the child support order was entered and is reflected in the orders with, as I mentioned earlier, the Department of Justice having to approve the child support payments to Mrs. Allegra from the business account. The court was aware that that was the primary asset at that time that was available to Mrs. Allegra for child support. But, Counsel, in fact, he only argued that he was under a legal disability as his reason for bifurcation. Isn't that correct? A legal disability being incarceration. That's right, Your Honor. Mr. Kuala, from that, obviously his incarceration is his inability to work and inability for the business to operate. So, you have a situation where there was no income coming into the business even though that was the source that was paying the child support and you have Mr. Allegra unable to work himself to generate any additional income. Therefore, you are reaching or have reached a situation where child support cannot be paid and, as a result, bifurcation would have been appropriate Let me ask you this, Counsel. How is it an abuse of discretion if respondent doesn't present any evidence of his income or lack thereof and the trial court issues an award relying on a previously justified order of support? The abuse of discretion occurred when the court failed to consider Mr. Allegra's request for bifurcation. That is the discretion that the trial court has to assess whether appropriate circumstances exist and determine whether bifurcation should occur. At that point in time, again, because of Mr. Allegra's incarceration, it would have granted the bifurcation as we see under the statute and as we see under the case law. That is the abuse of discretion that we are asking this honorable court to review. With respect to the award, did the respondent present any evidence establishing he had no income? At the time, the award that is entered in the judgment is reflective of the child support order that was entered earlier in the matter. At that point in time, the testimony that was presented was that there was no income. You see argued in Mrs. Allegra's brief before your honors that there wasn't any evidence to ascertain what assets or income were available that belonged to Mrs. Allegra. As a result of that, the court simply posited that $1,200 figure that was the base for the child support as well as a contribution for the health insurance coverage cost for the child, which is how we reached the current figure of $1,450.99. The court made aware both of Mrs. Allegra's inability to ascertain assets as well as Mr. Allegra's inability to earn income. But the respondent, he did have business income while he was incarcerated, correct? The business income, and it's reflected in the record as testified to by Mrs. Allegra, that was coming in during incarceration, that Mr. Allegra acquired through his incarceration for the flight services that he had provided prior to being incarcerated. There was no ongoing operation of the business other than her collection efforts. And lastly, back to the bifurcation, and I believe it was Justice Hutchinson that addressed this issue. Wasn't it the respondent's responsibility to make sure that Mr. Allegra's testimony was presented? So why didn't he exhaust all alternative options like attempting to testify remotely or even by way of evidence of death? To be honest, Your Honor, I know that the primary focus was on the writ of habeas corpus, and I know that the trial court believed that that was the case. But the testimony for the court, as we all know, it's one thing to have a person present standing before you so you can assess their demeanor, their ability when speaking, et cetera. It's another to have that preserved on tape or video if there's a change in that character. It's something altogether different simply to have a cold transcript in front of Your Honors. So the court itself was focused on that writ of habeas corpus, and it did grant that writ which was then dishonored by the DOJ. Upon the realization that that had been dishonored, Mr. Allegra did present a motion to continue trial and request the bifurcation. The court denied that motion. Therefore, that precluded Mr. Allegra. It would not continue the trial to allow for taking over an evidence deposition or for otherwise preserving his testimony. The court simply indicated that trial was proceeding on that date in his absence. Thank you, Ms. Grief-Bluff. I have no further questions. Justice Hutchinson, do you have any further questions? She probably still has us on. I had to go to telephone, but no, thank you. Okay. Justice Inhofe, do you have any further questions? No, I don't. Thank you very much. Thank you, counsel. At the end of Appleby's argument, you will have an opportunity for rebuttal. Thank you. Mr. Duffler, do you have Okay, you may begin your argument. Thank you, Your Honor. What I have here is that due to plea of guilty to federal drug charges for 65 months I'm afraid the sound Okay. Okay. Can you hear me? Yes. Okay. Yeah. All right. I'll try it again. Robert could not attend his trial because of his own actions. He pled guilty to a federal drug charge, received 65 months in the federal penitentiary, along with three years supervised release. He entered the Terre Haute facility somewhere around July of 2017. As the court knows, imprisonment brings certain restrictions, including the freedom to travel. And there has been several cases that state that a no due process rights are violated when a prisoner does not give him the right to attend a civil court proceeding to which he is a party. And I think that certainly applies here. The other issue I wanted to try to clarify was that in Robert's brief, he stated the expected release date was October of 2021. That is incorrect. The expected release date of Mr. Allegra now is February of 2022. It has always been somewhere in that area since the time he was imprisoned, which means that the proceedings that that took place on June 9th and 10th of 2019 would have had to been continued for over two and a half years to resolve this matter if the bifurcation had been granted. Now, I know there was some questions about the writ of testificandum and what have you. And this, quite frankly, bumps up into the fact of his repeated change of attorneys. He had five different attorneys in the space of less than two years. Mr. Valenti, Mr. Allegra's current trial attorney, filed the writ on May 9th of 2019, one month before the trial was going to begin. But I don't blame Mr. Valenti because, quite frankly, the writ was actually prepared and court-filed. Are you there? Yes. Oh, OK. I'm sorry. The writ was actually prepared and filed in January of 2019 by another law firm. I'm sure that what happened is by the time Mr. Valenti saw that, that left him literally a month and I think that answers one of the questions that Justice came up with in terms of what else could he do? Well, there really wasn't going to be any time for him to do anything at that point. But, again, that is because of the actions of his client. And he bears the burden of that. The issue about the incarceration and that, I don't know if counsel was making the argument that that alone is an appropriate circumstance. I do know, and I think she at least stated, I could find no cases at all where incarceration standing alone, in any case, was deemed to be an appropriate circumstance. In the briefs that were filed, the incarceration is hooked onto the inability, the supposed inability, of Mr. Allegra to pay child support, which is mystifying to me because Mrs. Allegra had been receiving child support since September of 2018, perhaps, I would say that perhaps even earlier than that, from the federal government under the federal charges because they leaned all of his accounts and allowed Lisa to take draws from that on a monthly basis. At some point in time, then, the government released the liens on the property. Then the matter shifted over to the state court and that's where we came in on a motion to impose a levy on the only bank accounts at that time that Lisa knew that was to chase bank accounts because she was basically frozen out of any further activities with her husband's business after she filed for divorce. The power of attorneys for her were revoked and the judge granted that. Since that time, Chase Bank has been sending Mrs. Allegra $1,455 every single month. There has been no inability of Mr. Allegra to pay child support. He has been paying it. I don't really understand how that could be any kind of appropriate circumstance whatsoever. Again, in terms of the incarceration, I know of no case and certainly no cases are cited in the briefs about incarceration alone being an appropriate circumstance. Regarding the premarital agreement, obviously that's a two-part thing, but all of the disposition of property was controlled by the premarital agreement. There might have been perhaps a one or two insignificant things like the young man's, young child's golf cart or something like that. All the major issues regarding property had been decided already. It seems clear to me that Judge Douglas, after going through multiple attorney changes and granting continuances, more than one continuance of the trial, at some point just basically drew a line. I certainly don't think it was an abuse of discretion knowing that if he granted the thing, it would have to be two and a half years of waiting to finish these things when in fact, and obviously without any testimony whatsoever, he was able to divide all the property. There was no objection to any of that at the time. Certainly on appeal there was. There were no issues to resolve quite frankly. I don't see how it can be stated that there was any kind of error as part of Judge Douglas's thing. Judge Douglas actually had the patience of a saint for most of the case. The argument that the premarital agreement was never properly admitted into evidence has absolutely no basis. Before I address that, I also want to address something that I believe that I raised in the brief that that issue had been waived. The premarital agreement was admitted on the reopening of the proofs in 2010. Because of the snafu in terms of admitting it at that time, the judge reopened the proofs and it was admitted then. When that premarital agreement was admitted at the end of counsel's cross-examination on it, it was admitted. No objection filed whatsoever. I don't know where that is coming from. The counsel claims that that issue was raised it wasn't waived, it was raised in the motion to reconsider. Yes, there was a motion to reconsider. Yes, there was argument about the premarital agreement not admitted. But what they're talking about, that it wasn't admitted in the June trial proceedings, not in the July reopen hearing. That has never been the only time that was ever raised, the first time we were aware of any issue was when we had to supplement the record because the original record of certification had no exhibits in it at all. So counsel and I sat down and tried to get all the documents on the grounds that it wasn't admitted. That is the first time it was raised, was on appeal. So I think that has been waived. But even if it wasn't, if you review, the only other argument that they had was that the judge, when the premarital agreement was, the direct examination was over, it was stated, asked the court to have the document admitted, and the court responded subject to cross. The entire argument involving keeping that document out is because the judge did not say it is admitted subject to cross, which is, quite frankly, I didn't even know how to handle that in the brief. I have never heard of that before. You go through the record of this case, the judge said it is admitted. The judge said subject to cross. The judge says it is admitted subject to cross. Anybody that has stood in a trial knows that is exactly what the phrase subject to cross means. If there was any objection, it should have been raised at the time that document was entered into evidence. The burden of objecting to the admission of evidence always falls to the party who seeks to have the evidence admitted into evidence. I don't believe there was anything. In terms of the judicial notice, the problem with the  have is that it doesn't match up with the facts. If you go to C-134, I think judge Hutchinson mentioned the declaratory judgment action, right on the first page of the motion. It says attached, exhibit A. Judge Douglas referenced the fact that he had a copy of it in the court file at the proceedings on June 9th and 10th. Basically, what they're intimating is that judge Douglas is not telling the truth or something. I really don't know. But it clearly was attached on the exhibit. Now, is it possible there should have been two and there was only one? Again, I don't know, but I cannot imagine judge Douglas coming out with I have it in my file when in fact he didn't have it in his file and he did rule on it as being valid and enforceable. Counsel, I know you were unable to hear the timer, but your time has elapsed, so finish your statement. Okay, I'll do it very quickly. Very briefly, back to child support, there was no reasonable way to establish what Mr. Allegra's income was, and because of that, the judge made, as dictated by the Severino case, he entered a child support order that was reasonable. Thank you. Thank you, counsel. Justice Hutchinson, do you have any questions? Yes, thank you. I do. Mr. Duthaler, you talked about the declaratory judgment action that I had discussed earlier. Counsel seems to argue that maybe all the judge had was several pages of the pre-hearing memo, or not pre-hearing, sorry, the pre-marital agreement. Was it the whole document attached as Exhibit A or just parts of the document? Yes, I can speak to that. The original, again, obviously the respondent filed that and it was said attached to Exhibit A. The few pages that she is talking about is when a motion was prepared regarding the sale of the marital residence, and to be perfectly blunt, I called Judge Tucker's secretary and said do you need another copy of the whole agreement? She said no, we always got a copy, send the pages. That's what happened with that. That is two different things at that point in time. By your count, if you can, how many times do you think that document was attached or sat in the file as a whole? Well, again, I think there certainly was, obviously, with the sale of the residence, that is a really good question, Judge. I would guess that it had been sitting in the file for somewhere around six, seven months would be my guess. I'm only saying that because the motions that were filed about the declaratory judgment were combined with a whole bunch of other motions. I believe that was somewhere around January of 2019, January 26th or something like that. Obviously, the trial was in June. He had had it for a while. Let's put it that way. We have heard that Robert was furloughed in July of 2020. Did we know that potential date when this case, when he asked for bifurcation or when there were issues of bifurcation? The only date we have was 2021. Absolutely not. The correct date again is February of 2022. He was furloughed. I want to make a distinction here. Yes, he was furloughed from incarceration. He is still incarcerated in the eyes of the Bureau of Prisons and under their general control and the specific control still of the facility. He has just been released because, again, as we all know, some older prisoners have been released. But I can clearly tell you, Your Honor, that at no time during the course of the original trial proceedings was anybody aware that he was going to get released in July of 2020. None. Okay. Now, there apparently is some money still held or there was some money still held in escrow at the end of these proceedings. If  correct, Your Honor. No, I do not think there's any money reserved, Your Honor. The funds were released, the balance of the funds was released after the judgment from my IALTA account to my client. Okay. I hope I'm answering your question, what you're asking. Well, I thought that there was some reference to the fact that there was some escrow of money, but that was in your IALTA account? That was the court ordered, ordered is the wrong word, the court permitted the sale of the former marital residence, and the original order required all of the proceeds to go into my IALTA account. Okay. And then at some point in time we filed the motion and the judge, I don't want to say 50%, but gave Mrs. Allegra a portion of the escrow funds with the rest to be determined at trial. So by the time this proceedings ended and this appeal started, child support had been ordered and paid and was being paid, property had been distributed, and while the parties may not have been happy with it, they were in a position to appeal. Is that correct? That is a very concise summary, Your Honor. Yes. All right. Thank you. Thank you, counsel. I don't have any other questions, and thank you, Justice Bridges. Thank you, Justice. Justice Zinnoff, do you have any questions? Yes, I do. Opposing counsel argued that with regard to the statutes relating to child support that the section that relates to incarceration is more specific than the section that relates to the trial court making a reasonable award and that the proper statutory interpretation is that the more specific governs. How do you respond to that argument in the context of this case and whether or not child support should have continued and whether the trial court should have made findings explaining the statute? I don't believe that that statute is intended necessarily to cover every incarcerated person. If somebody is incarcerated and has funds available to them, that the mere fact of incarceration is not going to award him a zero child support award or even the $40 minimum award. I think it's up to the current financial standing of the incarcerated person and at that point in time, again, he was still receiving money from contracts with other suppliers. I honestly don't know what that was. On a regular basis every month. I don't have any other questions.  you, counsel. Thank you. I have a few questions. Counsel, when a trial court fails to make any specific findings, in other words, in supporting in order to comply with the statutory support guidelines, how can he make a zero dollar award? How do we not find this to be an abuse of discretion? I'm not sure I understand the question. What I'm trying to say is the trial court, in this case there's no evidence of the amount of any business income. When we couple that with respondents incarceration, was the trial court required to enter a zero dollar order under section 505A 3-B? Hello?        with respondents incarceration, was the trial court required to enter a zero dollar order under section 505A 3-B? Hello? Counsel? Judge, I there to try to condense all this, at the original time that Mr. Allegra was imprisoned, which would have been again around July of 2017, he originally gave power of attorney to his still then wife, Lisa, to run the businesses. At some point, she filed for divorce, he cut her off from the businesses and appointed someone else. So it wasn't really a question of how much. She knew there was regular money coming in. She wasn't sure exactly as to how many accounts he had, but she certainly was aware of at least two or three or perhaps even four of them. So there would have been some and again, this was all in camera with Judge Douglas and originally the federal government had given her $2,500 a month. So that level of money was coming in and that was known to the court that it was $2,500 at that point in time. So I think that's how he actually cut it almost in half. So I think that Mr. Allegra actually got a pretty reasonable amount from working that way. Thank you Counselor. I have no further questions. Justice Hutchinson, do you have any further questions? No, thank you. Okay. Justice Inhofe, do you have any further questions? No, I don't. Thank you. Ms. Greif-Buss, do you have any rebuttal? Just a brief rebuttal, Your Honor, and I thank you for the opportunity. I believe your questions were about the child support order that was presented in our brief and on appeal for Your Honor to consider. It is precisely those facts that were known to the judge that counsel indicated were provided to the judge in camera and presented in court on the hearing on the motions for child support and in the trial of this matter that is the problem that we have with the support order that was entered in the judgment. The court, even if it determined what in its opinion was a fair and reasonable amount at which to set support following 505A, the court still had an obligation to set forth in its order those facts as to why it was setting that amount. The fact that it did not have financials from Mr. Allegra, if that were the case. The fact that it could not ascertain Mr. Allegra's income with any certainty, if in fact that were the case. The fact that despite his incarceration, the court was not following the specific statute requiring a zero-sum support order and was instead setting support in the amount of $1,450.99, the court was required to reflect those findings in its orders. The court did not do that in the earlier child support order entered in the pendency of this matter. The court did not do that in its final child support order reflected in the judgment before your honors. That is the flaw in the child support orders entered here. It violates statute, it violates case law, and it violates the requirements of specific findings. Going back to the premarital agreement, I'm kind of taking the issues in reverse order and I apologize. Going back to the premarital agreement, counsel specifically told you that on hearing on the motion for the sale of property,  no copy of the premarital agreement. In fact, all that is contained in the common law record is four pages of the premarital agreement, random pages not signed by the parties, attached to Mrs. Allegra's motion relating to that real estate. Nowhere, nowhere in the common law record does it make its file. However, it never made it to the actual record. Not on a motion, not on a response, not following an in-camera hearing or discussion, and certainly not at the trial of this matter. Counsel made reference to our necessity to go back before the court on a motion to include all of the exhibits with your honors common law record for this appeal. The court going through its own court file that counsel just referenced to you did not have the premarital agreement. The court did not have the exhibits that it itself acknowledged and mentioned as being in possession of at the close of the trial, specifically exhibits 1 through 29. The court never had in its possession Petitioner's Exhibit 30, which was the premarital agreement.  entirety, other than those four pages in the common law record. The court could not, under our case law, under our rules of justice, found its judgment on a document not in evidence that it did not possess. That's our issue with the premarital agreement. And again, returning back to the bifurcation  just briefly, bifurcation would have preserved the status quo in this matter. It would have entitled the parties to be divorced, to go back to having the property issues that the court ruled upon in its judgment, that the court ruled upon without entitling Mr. Allegra to have an opportunity to argue on his behalf, that the court ruled upon based on a premarital agreement not in evidence. Bifurcation would have obviated the need for the parties to be here before Your Honor. That would have addressed all of the issues in one succinct proceeding following the parties' dissolution when Mr. Allegra was able and present to represent himself. There would have been no harm to Mrs. Allegra in bifurcating. She was, as you've noted, possessed of financial assets resulting from the sale of the party's homes. She was possessed of her personal property at the time that the bifurcation could have occurred. The difficulty we have now lies in undoing the effects of not bifurcating this matter, of depriving Mr. Allegra of property to which, potentially, he had an interest and had a claim and could have asserted that he had been entitled to be present for the trial of this matter. The failure to bifurcate the matter deprived him of that opportunity to speak, deprived him of his property, and presented the issues we have before your honors. Thank you, counsel. Again, I know you're unable to hear the timer, but your time has elapsed. Thank you again. Justice Hutchinson, do you have any questions? Can you hear me now? Yes. We can. Were you trial counsel on January 7th of 2019? I was  counsel in this matter, your honor. I've only been appellate counsel. Since we don't have a transcript of that proceeding, can you please tell me how can you say with absolute conviction that he never had a copy because we don't know what he was looking at that day from his own words other than the ones that come up later that, well, I had to be looking at something. I wouldn't have made that decision otherwise. Correct, your honor. I absolutely agree with you. I cannot say with certainty he did not have a copy. I can say with certainty it is not in the common law record. I can say with certainty that at the close of the trial he was not holding a copy in his hands. By his own words he acknowledges he did not have a copy in his hands. I'm not asserting before the court that the judge did not at some point in history have a copy in his  I'm simply saying it is not in the record. I'm not going to ask you to look because we don't have a copy in the record. I don't have the time. There is a reference to R 101 that indicates this is when the subject to cross and whatever happened, whether it was or wasn't. That seems to be where the document was introduced. Do you have any knowledge of that at this time? I'm looking at R 101. I do have that in front of me, your honor. At that point, they're referencing exhibit 25. That is not the premarital agreement. It was a loan agreement between the petitioner, Lisa Allegra, and a Leticia Murphy. That's the only thing referencing money or  like that. I'm looking at R 101. Yes, your honor. It says specifically, this is Ms. Allegra's counsel speaking, a copy to the court, number 25. I ask that that be admitted. Mr. Valente said subject to the federal law. Is it true that even though the feds would not accept the habeas or the writ, that he would be furloughed in July of 2020? No, your honor. At that time, we were not aware that the furlough was impending. We were aware that Mr. Allegra's release date, the release from incarceration, would be shorter than the February 22nd date simply with credits for time served, et cetera. However, we did not know that he was going to be furloughed in July of 2020. But he's still under mandatory supervised release or parole at this time, correct? That's correct, your honor. He is not released. He is incarcerated simply not at the facility. He is remanded to custody to a different facility. A halfway house or another facility. I apologize. I do not know the address. I have no other questions. Thank you, your honor. Thank you, Justice Bridges. Thank you, Justice Hutchinson. Justice Zinoff, do you have any questions? I do. Counsel, today you have not argued that there were insufficient funds from which child support could have been paid, but rather that the trial court failed to make the necessary findings for deviation. And your prayer for relief includes this then as a ground for vacating the judgment of dissolution and retrying this case. Is that correct? That is correct, your honor. Isn't this more of a technical defect, so to speak, or error, and at the most, should we not consider just a remand for those findings? I would argue no, your honor. The situation that we have is that the court's order is reflective of the court's failure to consider Mr. Allegra's incarceration and his impact not only on earning ability through the pendency of this action, not only on earning ability at the time the judgment was rendered, but on his earning ability going forward. As always, child support should be reflected upon the party's earning ability at the present time, in addition to reflective of historically, if there are funds from which child support would be paid, the trial court has an obligation to make findings at the moment in time that it's rendering its support order. That then enables this court, or a subsequent lower court, if an issue is raised, to  judgment on the child support order in the future, so that the court has a historical reference point as to how it came to that support amount, what it was founded upon, and why any future deviations or changes or modifications would be necessary. Okay. Thank you, counsel. I appreciate it. I have no further questions. Thank you, Your Honor. Thank you, Justice Zinov. Counsel, you know, I'm looking at the record here, and I think it's C-306. The responding in this case stated the only remaining issue between the parties was financial in nature because the issue regarding the minor child had been resolved and was no longer in dispute. Was that correct?  Your Honor. The child is the allocation of parenting agreement which set forth the parties' rights and responsibilities to the child as well as allocating or attempting to set a framework for visitation upon Mr. Leger's release. Okay. Thank you, counsel. The court is adjourned. You may close the case and terminate the proceedings. Thank you.